UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Maksud Ul Mahbub,            Court File No. 14-cv-4825 (PJS/LIB)

Petitioner,

v.            **REPORT AND RECOMMENDATION**

Warden, Moose Lake Prison,

Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Maksud Ul Mahbub's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1] ("the Petition"). The Court has referred the Petition to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends **DENYING** Petitioner Maksud Ul Mahbub's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], with prejudice.

I.     **BACKGROUND AND STATEMENT OF FACTS**

On November 21, 2014, Petitioner Maksud Ul Mahbub ("Petitioner"), a Minnesota state correctional facility inmate, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody with the Court, challenging four (4) underlying Minnesota state court convictions for criminal sexual conduct. (Petition [Docket No. 1]).

     A.     **The Petition**

On March 8, 2011, in the Ramsey County, Minnesota District Court, following a joint trial on five (5) separate criminal complaints, a jury convicted Petitioner of one count of third-degree criminal sexual conduct and three counts of fourth-degree criminal sexual conduct. State

v. Mahbub, No. A11-1284, 2013 WL 4779009, at *3 (Minn. Ct. App. Sept. 9, 2013), review denied (Nov. 26, 2013). Petitioner challenges his underlying 2011 convictions for two reasons.

First, Petitioner argues that the trial court received evidence in violation of Rules 401, 403, 406, and 413 of the Federal Rules of Evidence, thus denying Petitioner due process and the right to a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments.

Second, Petitioner argues that the prosecutor committed misconduct, violating Petitioner's right to due process and a fair trial; Federal Rules of Evidence 401, 403, 406, and 413; and the Fifth, Sixth, and Fourteenth Amendments. Petitioner argues that the prosecutor offered prejudicial, inadmissible "habit" and "propensity" evidence; incorrectly stated that Petitioner had "drugged" his victims during closing argument; and misstated and distorted the definition of "beyond a reasonable doubt" during closing argument.

### B. Relevant Underlying State Court Proceedings

Petitioner appealed[1] his convictions to the Minnesota Court of Appeals and presented the following issues for review on appeal:

1. "The trial judge erred by admitting, without *Spriegl* [sic] procedures, evidence that women's underwear, cellphones, and cellphone batteries were found in Maksud Mahbub's home, evidence that lacked all probative value, was extremely prejudicial, and which tended to suggest other crimes." (Resp. App'x [Docket No. 7], at 29, 54).

2. "Maksud Mahbub was denied a fair trial by evidence, admitted without any *Spriegl* [sic] procedures, that Maksud Mahbub had a habit of 'approaching' drunken women in bars

---

[1] Soon after Petitioner commenced his direct appeal, the Minnesota Court of Appeals stayed the direct appeal to permit Petitioner to seek post-conviction relief. On April 6, 2012, prior to resolution of his direct state court appeal, Petitioner filed a first petition for post-conviction relief in Ramsey County District Court. (Resp. App'x [Docket No. 7], at 1). The petition focused exclusively on an ineffective assistance of counsel claim, the substance of which is not immediately relevant to the present proceedings. The Ramsey Count District Court denied the petition on July 18, 2012. (Id. at 20). After the district court denied Petitioner's post-conviction petition, the Minnesota Court of Appeals lifted the stay and proceeded with Petitioner's direct appeal. State v. Mahbub, No. A11-1284, 2013 WL 4779009, at *3 (Minn. Ct. App. Sept. 9, 2013), review denied (Nov. 26, 2013).

2

and by the prosecutor's use of this evidence to argue that Maksud Mahbub had a 'mission' to molest drunken women." (Id. at 29, 62).

3. "The trial judge erred by refusing to answer the jury's questions as to whether being 'very drunk' or 'intoxicated' means by legal definition you are 'physically helpless.'" (Id. at 29, 66).

4. "The prosecutor committed misconduct by misstating and distorting the definition of proof beyond a reasonable doubt to mean that that [sic] the proof required is not the proof people would use to conduct their 'most important affairs,' or to make 'hard' choices, such as marriage or termination of life support, but is only the kind of proof required when choosing school districts of places to live." (Id. at 30, 69).

5. "The prosecutor committed misconduct by implying, without evidence, that Maksud Mahbub had drugged the complaining witnesses." (Id. at 30, 72).

6. "Maksud Mahbub was deprived of effective assistance of counsel by counsel's failure to file a *Franks* motion." (Id. at 30, 74).

7. "The trial court erred by denying Maksud Mahbub an evidentiary hearing on his post-conviction motion." (Id. at 30, 77).

8. "Maksud Mahbub was deprived of a fair trial by the cumulative impact of the errors listed above." (Id. at 30, 79).

Relevant to the Habeas Petition presently before the Court are Petitioner's reassertion of the claims regarding (1) the trial court's receipt of prejudicial, inadmissible evidence (same as issue one, above), and (2) prosecutorial misconduct (same as issues two, four, and five, above). Petitioner first presented these issues as *state* law issues on his direct state court appeal below, citing to the Minnesota Rules of Evidence and relying on Minnesota case law throughout his

3

appellate brief. Specifically with respect to issue one – the trial court's receipt of prejudicial, inadmissible evidence – Petitioner argued that the evidence at issue was not relevant; that the evidence's prejudicial effect far outweighed its probative value; and that the evidence constituted inadmissible *Spreigl* material. (Id. at 57). Petitioner cited to Minnesota Rules of Evidence 401, 402, 403, and State v. Spreigl, 139 N.W.2d 167 (Minn. 1965), a Minnesota Supreme Court decision discussing the procedure for introducing "other acts" evidence under Minnesota state law, within the context of Minnesota state evidentiary law. (Id. at 57-58). With respect Petitioner's prosecutorial misconduct claims (issues two, four, and five), Petitioner's appellate brief discussed prosecutorial misconduct under Minnesota state law, *Spreigl*, and analogous Minnesota cases. (Id. at 64-65, 70-71, 73). While Petitioner *generally* referenced the right to a fair trial, (Id. at 63-65), his appellate brief below, in the relevant sections, does not explicitly reference or articulate any federal case law, rules, or standards and only obliquely and generally references due process and the right to a fair trial.

On September 9, 2013, the Minnesota Court of Appeals affirmed Petitioner's 2011 Ramsey County District Court convictions. Mahbub, 2013 WL 4779009, at *1. The court analyzed Petitioner's evidentiary claim under an abuse of discretion standard, relying on Minnesota case law and the Minnesota Rules of Evidence. Id. at *3-*4. The court concluded that "any error in admission of this evidence was harmless." Id. at *4. The court reviewed Petitioner's prosecutorial misconduct claims under a "modified plain-error test" because Petitioner *did not object* to any of the alleged instances of prosecutorial misconduct at the time of trial. Id. Again, the state Court of Appeals articulated the applicable standard of review with references to Minnesota case law and the Minnesota Rules of Evidence. Id. at *4-*5. The court held that the

"the prosecutor's statements did not constitute plain error because they were not sufficiently incorrect and did not deny appellant a fair trial." Id. at *5.

On or about October 8, 2013, Petitioner filed a Petition for Review with the Minnesota Supreme Court. (Resp. App'x [Docket No. 7], at 249-258). Petitioner presented three grounds for review, two of which are relevant to the present Habeas Petition now before the Court:

1. "May evidence be admitted which has no connection to the crime charged and which also tends to suggest other, uncharged crimes merely because this evidence is properly found during the execution of a search warrant or is otherwise connected to the defendant?" (Id. at 249).

2. "Does a prosecutor commit plain error by the following acts of misconduct; [sic] (a) defining reasonable doubt, to the effect that proof required was not the kind of proof people would use to conduct their 'most important' affairs or make 'hard' choices? (b) eliciting evidence that the defendant solicited a drunken woman in a bar without any *Spriegl* [sic] notice or showing of relevance? (c) arguing, without evidentiary support, that a defendant has 'drugged' the complaints [sic] in a sexual assault case?" (Id. at 250).

3. "Is a defendant denied the effective assistance of counsel if his counsel, for no discernible reason, fails to file a *Franks* motion and fails to investigate a witness who would have provided exculpatory information?" (Id. at 251).

The Minnesota Supreme court denied review on November 26, 2013. (Id. at 285).

## II. THE PETITION, [DOCKET NO. 1]

### A. Standard of Review

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in

5

custody in violation of the [U.S.] Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [U.S.] Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts deem a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). "[C]learly established Federal law" refers to the holdings, as opposed to the dicta, of [U.S.] Supreme Court opinions that had been released prior to the date on which the state court issued its decision. Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102-03 (D. Minn. 2008) aff'd, 575 F.3d 785 (8th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70 (2006)).

An "unreasonable application" of federal law occurs when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established

6

federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Significantly, the AEDPA establishes a one-year statute of limitations for all Section 2254 habeas actions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2).

### B. The Petition fails to state an actionable claim for relief because Petitioner failed to exhaust all available state court remedies.

A federal court will not entertain a petition for a writ of habeas corpus on behalf of a state

inmate unless the state inmate/petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). The exhaustion of state court remedies requirement honors the principles of comity and federalism and ensures that state courts receive the first opportunity to correct alleged errors raised by state detainees. O'Sullivan, 526 U.S. at 844; Rose, 455 U.S. at 518-19; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). To satisfy the exhaustion of state court remedies requirement, a petitioner must fairly present his or her claims to the highest available state court before seeking relief in federal court. O'Sullivan, 526 U.S. at 845. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Id. This includes presenting one's claims to the Minnesota Supreme Court, even if the petitioner does not have a *right* to review there. Id.; Hamilton v. Roehrich, 628 F. Supp. 2d 1033, 1045 (D. Minn. 2009) ("When a State has a two-tiered appellate review system, as does the State of Minnesota, a prisoner must exhaust both appellate levels before presenting his claims in Federal Court.") (citing O'Sullivan, 526 U.S. at 845).

The United States Supreme Court has explained the exhaustion of state court remedies requirement as follows:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights. . . . [Citations omitted.] To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. [Citations omitted].

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

8

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-66.

"Claims are exhausted only when the same factual underpinnings, and legal theories, were first properly raised in the State Courts." Hamilton, 628 F. Supp. 2d at 1045. The "[m]ere similarity between . . . state law claims and . . . federal habeas claims is insufficient" to satisfy the fair presentation/exhaustion requirement. Carney v. Fabian, 487 F.3d 1094, 1097 (8th Cir. 2007); McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997) (rejecting the petitioner's argument that claims "phrased in the jargon of state law" may be considered "[f]ederal [c]onstitutional issues since the state laws are in essence restatements of the [f]ederal [c]onstitution in different words."). Rather, the petitioner must "have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." Carney, 487 F.3d at 1096.

In Duncan, for example, the petitioner "did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment." Duncan, 513 U.S. at 366. Accordingly, the state court below merely analyzed the alleged evidentiary error "by asking whether its prejudicial effect outweighed its probative value, *not* whether it was so inflammatory as to prevent a fair trial." Id.

In Miller v. Minnesota, the petitioner wholly failed to mention federal law or the U.S. Constitution in his direct state court appeal. As a result, even though he raised a claim on direct

appeal below *similar* if not *virtually identical* to his federal habeas claim, the Minnesota Supreme Court never received a full and fair opportunity to consider the *federal* aspect of petitioner's claim. Instead, the state courts examined the issue only in the context of *state law and state precedent*. Miller v. Minnesota, No. 09-cv-2405 (DWF/LIB), 2011 WL 5593181, at *5 (D. Minn. Aug. 16, 2011), report and recommendation adopted, No. 09-cv-2405 (DWF/LIB), 2011 WL 5570697 (D. Minn. Nov. 16, 2011).

Analogous to the petitioners in Duncan and Miller, Petitioner in the present case ultimately failed to first present his habeas claims as *federal* issues to the Minnesota Supreme Court, and, therefore, he fails to meet the exhaustion requirements necessary for federal review. Petitioner articulated claims to the state courts concerning the admission of prejudicial, inadmissible evidence and three (3) alleged instances of prosecutorial misconduct on direct appeal that are, indeed, similar if not *virtually identical* to claims now articulated in the present Petition before the Court. However, Petitioner never first presented his claims as specifically *federal* issues to the Minnesota state courts. Rather, Petitioner expressly articulated his claims as *state law* issues in his appellate brief to the Minnesota Court of Appeals, citing only Minnesota state rules and case law. Tellingly, the Minnesota Court of Appeals addressed Petitioner's claims *in the context of Minnesota state law*. Both Petitioner's state court appellate briefing and the Minnesota Court of Appeals' decision focus their analyses on Minnesota state statutes, the interpretation thereof, and precedent set by Minnesota state case law.

Significantly, Petitioner *explicitly* also framed his claims below as *state* law issues in his Petition for Review to the Minnesota Supreme Court, arguing that the Minnesota Court of Appeals' decision "presents an important question on which the Supreme Court should rule and because it directly conflicts with an applicable precedent of a Minnesota appellate court." (Resp.

10

App'x [Docket No. 7], at 252). Petitioner referred to the evidentiary issue as an opportunity for the Minnesota Supreme Court to "develop, clarify and harmonize the law in an instance where a new principle or policy is being applied which has possible *statewide impact* and will likely recur unless resolved by the Supreme Court." (Id.) (emphasis added). Petitioner also framed his prosecutorial misconduct claims in a similar way, as *state* law concerns that have plagued Minnesota's appellate courts and have, allegedly, resulted in conflicting decisions. (Id. at 256-57). Again, Petitioner *explicitly* identifies the issue as one of "statewide" importance. (Id. at 257).

In his written submissions now to this Court, Petitioner argues that he did reference due process and his right to fair trial in his previous submissions to the Minnesota state courts over the course of his direct appeal, and that these references, alone, are sufficient to implicate federal issues. However, those references were not specific to any federal issues, and consequently, such generalized references are insufficient to alert the state courts to the federal nature of the claim(s). Gray v. Netherland, 518 U.S. 152, 163 (1996) ("We have also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court."); Fraction v. Minnesota, 678 F. Supp. 2d 908, 918 (D. Minn. 2008) (despite generally raising due process and fair trial allegations, "Petitioner never stated in his appeal to the Minnesota Court of Appeals or the Minnesota Supreme Court that these convictions violated his right to due process or right to a fair trial under the United States Constitution, nor did the Minnesota Court of Appeals address or make any constitutional rulings in its findings."). At no point in the direct appeal proceedings did Petitioner identify any specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim then before the state

11

courts. Accordingly, Petitioner has failed to demonstrate that adjudication in the state courts either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Consequently, Petitioner has failed to exhaust his state court remedies and is not entitled to habeas relief pursuant to 28 U.S.C. § 2254(d). See Miller v. Minnesota, 2011 WL 5570697 (D. Minn. Nov. 16, 2011).[2]

When a petitioner fails to exhaust a claim, federal courts review whether the unexhausted claim is procedurally defaulted, i.e., whether state law bars the claim from now being heard in state court. McCall, 114 F.3d at 757. The state procedural rule preventing relief must be well

---

[2] The above analysis assumes that Petitioner did indeed properly present his prosecutorial misconduct claims – albeit framed as *state law* issues – to the Minnesota appellate courts. However, the Court recognizes that it is possible to conclude that Petitioner also never properly presented his prosecutorial misconduct claims to the Minnesota appellate courts, even as state law issues. On direct appeal, the Minnesota Court of Appeals recognized that Petitioner had not properly preserved his prosecutorial misconduct claims for appeal, having neglected to object to the subject conduct at trial. See section I.B., supra. As a result, the Minnesota Court of Appeals reviewed Petitioner's prosecutorial misconduct claims for plain error. In this context, the Eighth Circuit has recently observed:

> We have remarked recently that our decisions on plain error review and procedural bar are in apparent disagreement. Some of our cases hold that a plain error review by a state court does not cure a procedural default, while others hold that when a state court conducts a plain error review, we also review for plain error in a habeas action. We are powerless to resolve this disagreement, but we may choose which line of cases to follow.

Sweet v. Delo, 125 F.3d 1144, 1152 (8th Cir. 1997) (internal citations omitted). In Sweet, the Eighth Circuit ultimately concluded that the petitioner had not "fairly presented" a claim of prosecutorial misconduct to the state courts when (1) on direct appeal, the petitioner complained that the prosecutor had failed to comply with a state statute; (2) the state court reviewed the claim – *raised for the first time on direct appeal* – for plain error and found it wanting; and (3) the petitioner raised the issue in his federal habeas petition as a prosecutorial misconduct claim. Id. at 1152-53. The Eighth Circuit held that because the petitioner's appellate briefs indicated that his "prosecutorial misconduct" argument "was couched exclusively in state-law terms and that federal issues were never addressed[,]" the state court's "plain error review encompassed only state-law issues and did nothing to cure Sweet's failure to assert his claim of prosecutorial misconduct in state court." Id. at 1153. The same could be said of Petitioner's prosecutorial misconduct claims in the present case, i.e., that the claims *procedurally defaulted* on direct appeal and were not revived by the Minnesota Court of Appeals' plain error review. Some courts have held that a plain error review of unobjected-to claims of error does not cure procedural default. See Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996). Regardless, Petitioner failed to present his prosecutorial misconduct claims as *federal* issues to the Minnesota Court of Appeals or the Minnesota Supreme Court, below.

established and regularly followed for a claim to be considered procedurally defaulted. Oxford v. Delo, 59 F.3d 741, 744 (8th Cir. 1995). Minnesota courts have "consistently held that a claim raised on direct appeal will not be considered upon a subsequent petition for post conviction relief." Roby v. State, 521 N.W.2d 482, 484 (Minn. 1995) (citing State v. Knaffla, 243 N.W.2d 737, 741 (Minn. 1976)). Further, Minnesota precludes relief for "all claims known but not raised by the defendant . . ." at the time of the direct appeal. Carney v. State, 692 N.W.2d 888, 891 (Minn. 2005).

In the present Petition, Petitioner's claims concerning evidentiary issues and prosecutorial misconduct are, as discussed, virtually identical to claims raised on direct appeal to the Minnesota Court of Appeals and the Minnesota Supreme Court. As in Miller, supra, because Petitioner has demonstrated that he was aware of these evidentiary and prosecutorial misconduct issues at the time of his direct state court appeal, he had every opportunity to raise the issues then as violations of federal constitutional law, as well as, state law on direct appeal in the state courts, and, accordingly, Petitioner now has no further recourse under Minnesota law and procedure. The Court finds Petitioner's claims are therefore procedurally defaulted.[3]

## C. Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability, ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial

---

[3] When a prisoner fails to exhaust his state court remedies for a claim, and state procedural rules preclude any attempt to satisfy the exhaustion requirement for that claim, then the claim is not unexhausted, but rather "procedurally defaulted." Coleman v. Thompson, 501 U.S. 722, 750 (1991). Thus, if a state court remedy remains, courts classify a previously unraised habeas claim as "unexhausted," but if state court remedies are no longer available, then courts consider the claim "procedurally defaulted." Armstrong v. Iowa, 418 F.3d 924, 926 (8th Cir .2005). Gustafson v. State, 754 N.W.2d 343, 348 (Minn. 2008) ("When a 'direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.'").

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In this case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than they have been decided here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy or worrisome about this case that warrants further appellate review. It is therefore recommended that Petitioner not be granted a COA in this matter. See, e g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

The Court recommends **DENYING** the Petition with prejudice.[4]

## III. CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

That Petitioner Maksud Ul Mahbub's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], be **DENIED with prejudice.**

Dated: July 20, 2015

Leo I. Brisbois
U.S. MAGISTRATE JUDGE

---

[4] A habeas corpus petition that includes one or more unexhausted claims will be dismissed without prejudice pursuant to Rose v. Lundy, 455 U.S. 509 (1982), if and only if there still is an available state court remedy by which the unexhausted claim(s) can be heard and decided on the merits in the state courts. Id. If there is no state court remedy available for any of the petitioner's unexhausted claims, then those claims normally will be dismissed with prejudice based on the doctrine of procedural default.

See also Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013) (holding that "[t]he doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law"). Petitioner has demonstrated no grounds to apply any exception to dismissal of his procedurally defaulted claim with prejudice.

14

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.